UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MID AMERICA SOLUTIONS, LLC,

      Plaintiff,

v.

MERCHANT SOLUTIONS
INTERNATIONAL, INC., PETER J.
CONCANNON and JOHN T. LEODLER,
Individually and collectively,

      Defendants.

_____/

File No. 1:15-cv-563

HON. ROBERT HOLMES BELL

## **O P I N I O N**

      This matter arises out of a contract entered into between Plaintiff Mid America
Solutions, LLC, and Defendant Merchant Solutions, International, Inc. (MSII). Defendant
Peter J. Concannon is the president of MSII and Defendant John T. Leodler is the vice
president, treasurer, and resident agent. Defendants have filed a motion for partial summary
judgment (ECF No. 9), to which Plaintiff has filed a response (ECF No. 12), and Defendants
have filed a reply. (ECF No. 13.) For the reasons that follow, Defendants' motion will be
granted.

### **I.**

      Plaintiff Mid America Solutions is an Indiana Limited Liability Company. Ronald
Smith is Plaintiff's sole member, and resides in Missouri. Plaintiff's principal place of
business is also in Missouri. Defendant MSII is a Michigan corporation. MSII "offers a wide

range of products and services to provide merchants (whether retail, mail/telephone order, or ecommerce) with the ability to accept all major forms of payment, including but not limited to credit cards, debit/ATM cards, checks/ACH and electronic gift cards." (Defs.' Mot. Summ. J. 4, ECF No. 9.)

MSII uses independent contractors to solicit merchants and enter into merchant agreements. Plaintiff was one of MSII's independent contractors. On March 5, 2007, Plaintiff entered into an "Independent Contractor Agreement" (Agreement) with MSII, which was governed by Michigan contract law. (Agreement ¶ 9, ECF No. 9-1.) The Agreement provided that Plaintiff "will serve as a salesperson of [MSII] in [MSII's] business of credit card and other transaction processing services." (*Id.*) The payment arrangement in the contract states:

> Commission. MAS will be paid a residual commission equal to (see schedule A). This is a percentage of the annual projected Gross Profit attributable to merchant accounts obtained by MAS that have begun processing through one of [MSII's] processing banks. "Gross Profit" means the dollar value of the basis point difference between the discount rate and per-item fees charged to the merchant and the discount rate and per-item fees charged to [MSII] and its processing banks. At the time of each payment, MAS and an officer of [MSII] will execute a statement agreeing to the Gross Profit on the account and MAS' resultant commission. MAS' execution of this statement and acceptance of the accompanying payment will satisfy all of [MSII's] obligation to MAS on the merchant account covered by the statement.

(*Id.* ¶ 3a.)

Plaintiff contends that MSII has breached the Independent Contractor Agreement. Specifically, Plaintiff states that MSII:

> [B]reached its contractual obligations to Plaintiff by falsely reporting merchant volumes, net profits, monthly residual reports . . . In addition Defendant

falsifies merchant statements that report volume, transactions, returns, chargebacks, and calculation of merchant expenses. Defendant uses varying methods in its reporting including devising false explanations for chargebacks and adjustments in reporting and utilizes concocted coding for tracking and reference purposes of its false accounting to Plaintiff and its merchants.

(First Am. Compl. ¶¶ 7-8, ECF No. 10.) As a result of this "false reporting" that led to reduced commission payments for Plaintiff, Plaintiff brings four claims against Defendants: (1) breach of contract against Defendant MSII; (2) actionable fraud against Defendants Concannon and Leodler; (3) silent fraud against Defendants Concannon and Leodler; and (4) concert of action against all Defendants.

Defendants' motion for partial summary judgment contends that the three "tort claims against Concannon and Leodler arise solely out of MSII's contractual obligations to Plaintiff, [and therefore] the claims are barred by Michigan's economic loss rule. Accordingly, summary judgment is warranted in favor of Concannon and Leodler on Counts II through IV of the Complaint." (Defs.' Mot. Summ. J. 6-7, ECF No. 9.)

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 575, 587 (1986).

3

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matushita*, 475 U.S. at 586-87)). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Defendants' motion for partial summary judgment is based on their assertion that Plaintiff's three claims against Defendants Concannon and Leodler—alleging actionable fraud, silent fraud, and concert of action—are not "independent torts" because "the wrongdoings alleged against these individual defendants . . . are nothing more than a claim that they did not abide by the accounting and reporting requirements of the *contract* between the parties." (Defs.' Mot. Summ. J. 3, ECF No. 9) (emphasis in original).

4

## A. Applicable Law

 "The law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Brock v. Consolidated Biomedical Laboratories*, 817 F.2d 24, 25 (6th Cir. 1987) (collecting cases). Michigan courts have required this distinction in duty "at least as far back as [1956]." *Rinaldo's Constr. Corp v. Michigan Bell Telephone Co.*, 559 N.W.2d 647, 658 (Mich. 1997) (citing *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956)). "In *Hart*, Michigan's highest court noted the distinction between the legal duty which arises by operation of a contract and the fundamental concept of a legal duty to avoid conduct which creates liability in tort." *Brock*, 817 F.2d at 25. Michigan courts have referred to the requirement that a separate and distinct duty exist as the "economic loss doctrine" when the contract is governed by the Uniform Commercial Code (UCC). *Rinaldo's Constr.*, 559 N.W.2d at 658 ("In addition to acknowledging this distinction at least as far back as *Hart*, the distinction has more recently been applied to sales contracts under the UCC under the rubric of the 'economic loss doctrine.'").

A defendant's duty to a plaintiff is a "function of the contract between the parties" if, absent the contract, the harm complained of "would not exist." *Brock*, 817 F.2d at 25. A "claim in tort cannot exist under Michigan law [if the] plaintiffs do not claim that the defendant has caused any harm in the realm beyond the contract." *Id.* "'[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be

imposed.'" *Id.* at 25-26 (quoting W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts*, § 92 at 656 (5th ed. 1984)) (alteration in original). Michigan courts have applied these principles to both nonintentional torts such as negligence and intentional torts such as fraud. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (Mich. Ct. App. 1995) (applying economic loss doctrine to fraud claim); *Imaging Fin. Servs., Inc. v. Eastman Kodak Co.*, No. 97-1930, 1999 WL 115473, at *3 (6th Cir. Feb. 9, 1999) (same). In *Huron Tool*, the court explained its rationale for applying the economic loss doctrine to all fraud claims other than fraud in the inducement:

> [T]he misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort. "Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of [the] plaintiffs' contract claim. . . . [It] is undergirded by factual allegations identical to those supporting their breach of contract counts. . . . This fraud did not induce the plaintiffs to enter into the original agreement nor did it induce them to enter into additional undertakings. It did not cause harm to the plaintiffs distinct from those caused by the breach of contract. . . ."

*Id.* at 545 (quoting *Enter. Grp., Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 201 (D.N.J. 1989)).

**B. Application**

Following the above framework, the Court finds that Plaintiff's fraud claims do not "allege[ the] violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr.*, 559 N.W.2d at 658. Plaintiff's complaint is telling. Plaintiff alleges that

Defendants are liable for a breach of contract due to Defendants' "false reporting." Under

Plaintiff's breach of contract count, Plaintiff states that:

> Defendant MSII has breached and continues to breach its contractual obligations to Plaintiff by falsely reporting merchant volumes, net profits, monthly residual reports. Defendant falsely uses and reports 3rd party processing (of American Express) volume(s) and transactions to Plaintiff. In addition Defendant falsifies merchant statements that report volume, transactions, returns, chargebacks and calculation of merchant expenses.

(First Am. Compl. ¶ 7, ECF No. 10.) Thus, a contractual duty existed to truthfully report

merchant volumes, merchant statements, net profits, and monthly residual reports so that

Plaintiff would receive proper payment amounts. Plaintiff also alleges that Defendants' false

reporting, and failure to report the false reporting, was fraudulent. The fraud count in

Plaintiff's complaint states, in part:

> Defendants Concannon and Leodler, despite being well informed of the fraudulent reporting by Defendant MSII to Plaintiff continued to cause the altered, false and phony reports to be prepared and promulgated to Plaintiff. Plaintiff is informed and believes that Defendant Leodler actually prepares the false reports meant to deceive Plaintiff and any other interested parties under the knowledge, permission and direction of Defendant Concannon.[1]

---

[1]    Plaintiff's response to Defendants' motion for partial summary judgment alleges that Defendants Concannon and Leodler's fraudulent actions were carried out "for their individual purpose of literally stealing the significant sums from the residuals paid by NPC/Vantiv without detection by either Plaintiff and for that matter the corporation (MSII), its Board of Directors, Shareholders, or future inquiry from any legal authority. Their acts are ultra vires to the corporation and not legally authorized." (ECF No. 12, PageID.73.) This was not alleged in Plaintiff's complaint and is not supported elsewhere in the record. To determine whether a "fraud claim is viable apart from its contractual claims . . . we must look to the four corners of Plaintiff's complaint, accept all factual allegations as true, and determine whether the fraud claim falls outside the ambit of the economic loss doctrine." *Huron Tool*, 532 N.W.2d at 546. Thus, the Court will not consider this allegation.

   Further, regardless of the motive for the allegedly fraudulent action, Defendants' duty to provide accurate accounting and reports still arises out of the contractual terms. Moreover, Plaintiff does not have standing to raise "the plea of ultra vires acts." *See Dwelley v. Tom McDonnell, Inc.*, 54 N.W.2d 217, 218 (Mich. 1952).

(First Am. Compl. ¶¶ 15, 16, ECF No. 10.) Plaintiff indicates that the damages suffered as a result of Defendants' fraudulent actions are "an amount as above stated" in the breach of contract claim. (*Id.* ¶¶ 17, 21, 25.)

As Plaintiff's complaint indicates, absent the contract between the parties, Defendants would owe no duty to provide reports to Plaintiff. The harm suffered by Plaintiff as a result of Defendants' alleged breach of contract is the same as the harm suffered by Plaintiff as a result of Defendants' allegedly fraudulent conduct–put differently, there has been no harm suffered beyond the realm of the contract. *See Brock*, 817 F.2d at 25. Because "[t]he operative allegations in Plaintiff['s] fraud claims would not exist in the absence of the contracts between the parties . . . such allegations cannot be maintained as tort-based claims under Michigan law." *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 722 (E.D. Mich. 2003).

Plaintiff's arguments to the contrary are not persuasive. Plaintiff argues that the economic loss rule does not apply because the contract at issue is not governed by the Uniform Commercial Code. Courts are split on the matter. Some courts have held that the doctrine extends to all contracts. *See Huron Tool*, 532 N.W.2d at 546 ("Although the Supreme Court's discussion of the economic loss doctrine in *Neibarger* was linked closely to the UCC context of the case, the doctrine is not limited to the UCC."); *Transcontinental Trade & Fin. Corp. v. Besser Co.*, No. 08-12940, 2009 WL 349357, at *3 (E.D. Mich. Feb. 10, 2009) ("Michigan has subsequently extended the economic loss doctrine to contracts for

services.") Others have held to the contrary. *Quest Diagnostics, Inc. v. MCIO WorldCom, Inc.*, 656 N.W.2d 858, 863 (Mich. Ct. App. 2002) ("This Court has declined to apply the economic loss doctrine where the claim emanates from a contract for services."); *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545 550 (6th Cir. 1995) (noting that the "doctrine is associated with 'transactions in goods,' and not with transactions in services").

Regardless of the label the Court applies, the principles set forth in *Hart* still govern Michigan law: "[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise, not." 79 N.W.2d at 898. Here, Plaintiff's tort claims arise solely out of Defendants' contractual duties. Accordingly, whether framed under the economic loss doctrine or the Michigan Supreme Court's decision in *Hart*, the claims are subject to dismissal. *See Insight Teleservices, Inc. v. Zip Mail Servs., Inc.*, No. 14-11395, 2014 WL 7012653, at *10-11 (E.D. Mich. Dec. 11, 2014) (granting summary judgment as to tort claims that were indistinguishable from breach of contract claims without reaching a determination as to whether the economic loss doctrine applies to service contracts); *Convergent Grp. Corp. v. Cnty. of Kent*, 266 F. Supp. 2d 647 (W.D. Mich. 2003) ("It is unnecessary for the Court to decide whether the economic loss doctrine also applies to service contracts, however, because the [plaintiff's] fraud claim is based solely upon the [defendant's] contractual duties and, therefore, is subject to dismissal under *Hart*.") (citing *Heidtman Steel Prods., Inc. v. Compuware Corp.*, 164 F. Supp. 2d 931, 939-40 (N.D. Ohio 2001)).

Plaintiff cites *Cooper v. Auto Club Insurance Association*, 751 N.W.2d 443 (Mich. 2008) for support of its position that its fraud claim implicates separate duties from the breach of contract claim. *Cooper* allowed both a fraud claim and a claim under Michigan's no-fault insurance act to survive, noting that "[a] fraud claim is clearly distinct from a no-fault claim." *Id.* at 448. The Court stated that insurers have a separate and independent duty not to deceive the insureds and, importantly, that this duty "is imposed by law as a function of the relationship of the parties." *Id.* Under Michigan law, "'the relationship between . . . insurers and the insureds is 'sufficient to permit fraud to be predicated upon a misrepresentation.'" *Id.* at 448 n.3 (quoting *Hearn v. Rickenbacker*, 400 N.W.2d 90 (Mich. 1987)). This case involves neither Michigan's no-fault act nor the duty that insurers owe to those insured and, thus, the established case law allowing tort claims to coexist with claims under the no-fault act does not impact this Court's analysis.

Lastly, because the Court finds that Plaintiff's fraud claims must be dismissed, Plaintiff's claim under the theory of concert of action must also be dismissed. "In order to withstand a motion for summary judgment based on a failure to state a cause of action, a plaintiff need only allege that the defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed." *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 176 (Mich. 1984). No underlying tort action survives this motion for partial summary judgment. Therefore, Plaintiff's concert of action claim does not survive either.

**IV.**

For the reasons stated, Defendants' motion for partial summary judgment will be granted. Counts II, III, and IV, alleging fraud, silent fraud, and concert of action against Defendants Peter J. Concannon and John T. Leodler will be dismissed. Plaintiff's breach of contract claim against Defendant MSII remains. An order consistent with this opinion will enter.

Dated: <u>January 8, 2016</u>             <u>/s/ Robert Holmes Bell</u>
                                         ROBERT HOLMES BELL
                                         UNITED STATES DISTRICT JUDGE